KUTAK ROCK LLP
Michael A. Condyles (VA 27807)
Loc Pfeiffer (VA 39632)
Peter J. Barrett (VA 46179)
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia  23219-3500
(804) 644-1700
*Counsel to the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-10816 |
| | ) | Jointly Administered |
| ON-SITE SOURCING, INC., et al.,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE (1) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (2) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (3) GRANTING RELATED RELIEF**

**THIS MATTER** comes before the Court on April 22, 2009 (the "Sale Hearing") upon the following matters: (i) *Motion of the Debtors for Entry of Orders (I)(a) Establishing Bid Procedures Related to the Sale of Substantially All of the Debtors' Assets, (b) Scheduling a Hearing to Consider the Sale, (c) Approving the Form and Manner of Notice of Sale by Auction, (d) Establishing Procedures for Noticing and Determining Cure Amounts and (e) Granting Related Relief; and (II) (1) Approving Asset Purchase Agreement and Authorizing the Sale Free and Clear of All Liens, Claims, Encumbrances and Interests, (2) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (3) Granting Related*

---

[1]  The debtors in these proceedings are:  On-Site Sourcing, Inc., DocuForce Financial Corp. and On-Site LA, Inc.

*Relief* (the "Sale Motion") dated February 5, 2009 [Docket No. 10]; and (ii) the *Notice of Material Changes to Terms of Asset Purchase Agreement* (the "Notice of Material Changes") dated April 9, 2009 [Docket No. 251] which memorialized certain changes to the terms of the APA (defined below) and the agreement between the Debtors, Integreon Discovery Solutions (DC), Inc. ("Integreon") (the buyer under the APA), and the Official Committee of Unsecured Creditors of On-Site Sourcing, Inc. (the "Committee").

**UPON DUE CONSIDERATION OF THE RECORD AND THE EVIDENCE BEFORE THE COURT, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052, made applicable to this proceeding pursuant to FED. R. BANKR. P. 9014.

B.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ l57(b)(2) and 1334.  The Sale Motion and the Notice of Material Changes involve core proceedings in accordance with 28 U S C § 157(b). The Court has personal jurisdiction over all necessary parties to the Sale Motion and the Notice of Material Changes.  The appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and, except as set forth herein, all objections having been resolved or overruled pursuant to this Order.

C.      Pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each individually a "Bankruptcy Rule"), the Debtors seek authority to (i) sell substantially all of their assets (the "Assets") free and clear of all liens,

claims, encumbrances and interests pursuant to an asset purchase agreement with Integreon (the "APA"); and (ii) assume and assign certain executory contracts and unexpired leases in connection with such sale as set forth in Schedule 1 attached to this Order (the "Assumed Contracts"). The Assets shall not include: (i) any and all tax refunds due to the Debtors and their related entities (the "Tax Refunds"); (ii) any hard assets related solely to Debtors' paper-discovery operations (the "Paper Assets"); and (iii) any Chapter 5 causes of action provided however, that the Debtors and/or the Committee agree not to pursue such actions against certain vendors to be identified by Integreon (collectively, the "Excluded Assets").

D.     On February 23, 2009, this Court entered an Order approving the terms and conditions of an auction and bidding procedures to consider higher or otherwise better offers for the Assets (the "Bidding Procedures Order"). Notice of the Bidding Procedures Order was served, in accordance with FED. R. BANKR. P. 2002 and 6004, the Local Rules of this Court and the Bidding Procedures Order (the "Sale Notice"), upon (a) the Office of the United States Trustee for the Eastern District of Virginia; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Debtors' secured lender; (d)  the Internal Revenue Service; (e) the taxing authorities to which the Debtors pay taxes; (f) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (g) all other known interested parties including potential bidders; and (h) all counter-parties to the Assumed Contracts. The Sale Notice was also published in the Washington Post. The Sale Notice constitutes good and sufficient notice of the Sale Motion and the Sale Hearing, and no other or further notice of the Sale Motion or the Sale Hearing or the entry of this Order need be given. No party has filed an objection to the Sale Motion.

E.	Integreon has (i) full corporate power and authority to enter into the APA and all other documents contemplated thereby and the transfer and conveyance of the Assets has been duly and validly authorized by all necessary corporate action necessary of Integreon; and (ii) all of the corporate power and authority to consummate the transactions under the APA.

F.	The record in these cases, the representation of counsel and/or the testimony and other evidence proffered or adduced at the Sale Hearing established that: (i) the Debtors retained professionals to assist them with the marketing of the sale of the businesses; (ii) the Debtors were unable to procure a buyer for the business and were compelled to seek a sale of the Assets; (iii) the Debtors identified and marketed the Assets for sale extensively; (iv) the Debtors and Integreon negotiated extensively and at arms-length the terms of the APA; (v) the Debtors afforded interested potential buyers a full, fair and reasonable opportunity to make a higher and better offers for the Assets pursuant to the Bidding Procedures Order; (vi) the Debtors provided potential buyers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets; (vii) no other bids were received in accordance with the terms of the Bidding Procedures Order; (viii) the Debtors named Integreon as the successful bidder and notice of Integreon's selection as the successful bidder pursuant to the Bidding Procedures Order was filed and served on March 25, 2009; (ix) the Bidding Procedures were non-collusive, in good faith, substantively and procedurally fair to all parties; (x) the Purchase Price (as defined in the APA) constitutes the highest and best offer for the Assets; (xi) the sale of the Assets shall provide a greater recovery for creditors than would be provided by any other practical means; (xii) no other party has offered to purchase the Assets for greater economic value to the Debtors; (xiii) the terms are fair and constitute full and adequate consideration and

reasonably equivalent value for the Assets; and (xiv) the approval of the sale will serve the best interests of the estates.

G.     The Court finds that the Debtors have advanced sound business reasons to sell the Assets to Integreon pursuant to section 363(b) of the Bankruptcy Code.  The Debtors and their professionals diligently and in good faith analyzed all options available in connection with the disposition of the Assets and determined that the terms and conditions set forth in the APA represent a fair and reasonable purchase price and constitute the highest and best consideration obtainable for the Assets.  The sale of the Assets will provide economic benefit to the creditors and to the Debtors.  The Court finds these circumstances compelling to authorize the sale outside of a plan of reorganization in that, among other things, absent the sale, the value of the Assets would be diminished substantially and the estates and their creditors would be harmed.

H.     The Court finds that the Debtors have satisfied section 363(f) of the Bankruptcy Code.  Integreon has a valid lien against the Assets, and, pursuant to section 363(f) of the Bankruptcy Code, has consented to this Order and the transactions contemplated hereby.

I.     The Court finds that the Debtors have properly exercised their business judgment to assume and to assign the Assumed Contracts as part of the sale to Integreon.  Upon the advice of their professionals, the Debtors have determined in good faith that the assumption and the assignment of the Assumed Contracts will benefit the estate.  The Debtors are winding down their affairs so that the contractual relationships under the Assumed Contracts are no longer necessary as to the Debtors.  However, the assumption and assignment of the Assumed Contracts is material to the sale to Integreon.  In addition, the assumption and assignment would eliminate claims against the Debtors' estates that might otherwise result from rejection.  Accordingly, the Debtors' business judgment to assume and to assign the Assumed Contracts is appropriate.

J. The Court finds that the Debtors have satisfied section 365(f) of the Bankruptcy Code. The Debtors and/or Integreon have provided sufficient adequate assurance to the counter-parties under the Assumed Contracts. Integreon has provided adequate assurance of its future performance under the Assumed Contracts and the proposed assumption and assignment of the Assumed Contracts satisfies the requirements of the Bankruptcy Code including, inter alia, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable. Further, the Debtors have already provided notice to the counter-parties regarding the amounts the Debtors assert are necessary to cure any existing defaults under each Assumed Contract (the "Cure Amounts"). No objection has been filed to the proposed Cure Amounts attached as Schedule 1 (a prior version of this Schedule was attached to the *Notice of Filing of Amended Schedule of Cure Amounts for the Assumption and Assignment of Certain Contracts and Leases* [Docket No. 177]). No counter-party to an Assumed Contract has filed a response to the proposed Cure Amount. The Court finds that the Cure Amounts are proper amounts to cure any default under the Assumed Contracts, that the counter-parties thereto shall be forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure amount or other amounts with respect to the Assumed Contracts, that the Debtors and Integreon are entitled to rely solely upon the proposed Cure Amounts Accordingly, the Debtors shall be authorized to cure any and all defaults under the Assumed Contracts by paying the Cure Amounts as set forth in Schedule 1.

K. The Court finds that Integreon is not an "insider" or otherwise an "affiliate" of the Debtors (as such terms are defined in section 101 of the Bankruptcy Code). Integreon is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to the

Sale, all of the Assets and the Assumed Contracts.  The APA was negotiated and entered into in good faith, based upon arm's length bargaining and without collusion.  Neither the Debtors nor Integreon has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) to the APA or to consummation of the Sale to Integreon.  Integreon is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

L.       The Notice of Material changes describes the agreement of the Debtors, Integreon and the Committee to the creation of a collateral carve-out from Integreon's liens and security interests for the exclusive benefit of the general unsecured creditors (the "Collateral Carve-Out").  By separate order, the Court has found and determined that the Collateral Carve-Out circumvents the ordinary Chapter 11 distribution process and violates the absolute priority rule. The Committee does not consent to the Court's denial of the Collateral Carve-Out.    The Committee has thoroughly investigated the financial affairs of the Debtors including the circumstances of the sale, Integreon's involvement, and the marketing and sale efforts of the Debtors with respect to the Assets.  The Committee has consulted with the Debtors and Integreon on all aspects of the sale.  The Committee supports the sale of the Assets to Integreon pursuant to the terms of the APA  and consents to the sale of Assets to Integreon pursuant to 363(f) of the Bankruptcy Code.

M.       All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, settled, or otherwise provided herein, it, and all reservations and rights contained therein, is overruled and denied.

**UPON DUE CONISDERATION OF THE ABOVE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Sale Motion is granted and the terms of the APA are approved as provided herein.

2.      The Debtors and Integreon are hereby authorized, pursuant to section 363(b) of the Bankruptcy Code, to take such actions as may be necessary and appropriate to implement the APA and to consummate the sale without the necessity of a further order of this Court.

3.      The Debtors are authorized, pursuant to sections 363(b) and (f) of the Bankruptcy Code, to sell the Assets to Integreon upon delivery of the consideration specified in the APA and completion of all other deliveries required under the APA.

4.      To the extent of applicable law, the sale of the Assets shall vest Integreon with good title to the Assets, and the Assets shall be free and clear of any and all liens encumbrances and any and all "claims" as defined in §101(5) of the Bankruptcy Code) (collectively, the "Claims"), other than as provided in the APA.  With respect to the tax claims, including penalties, fees and interest, of Arlington County, Virginia for the year 2009 (the "2009 Property Tax"), such claims and liens shall remain attached to the Assets unless otherwise satisfied by Integreon.  The Debtors and their estates shall have no liability for the 2009 Property Tax and any lien of Arlington County, Virginia related to or arising in connection with the 2009 Property Tax shall attach solely to the Assets and shall not attach to the Excluded Assets or any cash consideration paid into the estate, including but not limited to the Estate Distribution and the Segregated Distribution (each, as defined below).  All such Claims on or against the Assets, including the tax claims, including penalties, fees and interest, of Arlington County, Virginia for the year 2008 (the "2008 Property Tax") shall be satisfied by the Detors' Estates from the

amounts paid by Integreon under the APA and as more fully described below. Integreon, the Debtors and the Committee have agreed that, in consideration of Integreon's increase in the Estate Distribution (as defined below) the 2008 Property Tax shall be paid in full and satisfied first, with $60,000 from the Estate Distribution, then, if necessary with up to $100,000 paid fifty percent (50%) from the Estate Distribution and fifty percent (50%) from the Segregated Distribution, provided, however, if the total 2008 Property Tax shall exceed $160,000, any amounts over $160,000 shall be paid solely from the Estate Distribution.

5.      The sale of the Assets to Integreon under the APA constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, but not limited to the laws of the Commonwealth of Virginia and the State of Delaware. The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

6.      The Debtors are hereby authorized to assume and to assign the Assumed Contracts pursuant to section 363 and 365 of the Bankruptcy Code. Each of the Assumed Contracts set forth on Schedule 1 to this Order constitute executory contracts or unexpired leases within the meaning of section 365 of the Bankruptcy Code and will be assumed without further order of the Court by the Debtors and assigned to Integreon effective upon the Closing. The assumption of any liabilities under the Assumed Contracts by Integreon shall constitute a legal, valid and effective delegation of all liabilities thereunder to Integreon and shall divest the Debtors of all liability with respect to such Assumed Contracts.

7.      Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Debtors and Integreon (as governed by the APA) shall pay to the counter-parties to any Assumed Contracts the Cure Amounts, if any, set forth on Schedule 1 hereto, at closing of the sale of the

Assets (the "Closing") or such other amounts as the parties to such contracts shall have agreed to accept in lieu of such Cure Amounts. Integreon shall assume the obligations of the Debtors under the Assumed Contracts arising from and after the Closing and shall assume obligations for the pre-petition portion of the Cure Amounts, but only as provided for in the APA. Upon assumption and assignment of any Assumed Contract, the Debtors and the estate shall be relieved of any liability for breach of such Assumed Contract occurring after such assignment pursuant to section 365(k) of the Bankruptcy Code.

8. The Assumed Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms. All Assumed Contracts shall remain in full force and effect. No sections or provisions of any Assumed Contracts that purport to (i) prohibit, restrict, or condition the Debtors' assignment of the Assumed Contract, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assumed Contract; (ii) authorize the dissolution of any partnership or determination, cancellation, or modification of the partnership interest or Assumed Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; or (iii) provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts upon the occurrence of the conditions set forth in subsections (i) and (ii) above, shall have any force and effect with respect to the Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code. Integreon shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption.

9.      The Debtors are authorized to execute such documents and take all other actions as may be necessary to release any Claims of any kind against the Assets as such Claims may have been recorded or may otherwise exist. Integreon has not assumed or otherwise become obligated for any of the Debtors' liabilities other than as set forth herein and in the APA. Consequently, all holders of liabilities retained by the Debtors may not assert or prosecute any Claim or cause of action against Integreon to recover on account of any liabilities other than those pursuant to the APA and this Order.

10.     Integreon is hereby granted and is entitled to the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to any transfer of any Assumed Contracts as part of the sale of the Assets pursuant to section 365 of the Bankruptcy Code and this Order.

11.     At Closing, any and all claims of the Debtors, Debtors' estates, and the Committee (including, but not limited to, any and all manner of rights, claims, judgments, demands, actions, causes of action, controversies, losses, obligations, contracts, covenants, agreements, promises, damages, costs, expenses and liabilities of every kind and nature whatsoever at law or in equity, suspected or claimed, known or unknown and whether or not discoverable, all damages, suits of whatever kind or nature, whether asserted individually, collectively, or in a representative capacity, directly, derivatively, vicariously, indirectly, by operation of law or otherwise, whether suspected or claimed, known or unknown), if any, against any of the Assets, Integreon, any of Integreon's parents, affiliates, and subsidiaries and any and all directors, general and limited partners, members, shareholders, officers, executives, employees, principals, representatives, trustees, agents, attorneys, advisors, executors, heirs, successors and assigns, past and present of any and all of the foregoing (each, an "Integreon

Party" and, collectively, the "Integreon Parties"), relating to any and all claims other than claims relating to or arising under the APA, including, but not limited to, any and all claims relating to any past conduct or activity of any Integreon Party and any claims that would relate to any of the debt owed by the Debtors to any Integreon Party are hereby released and discharged and such release and discharge shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with this case or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

12.     The Debtors and Integreon and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Integreon deem necessary or appropriate to implement and effectuate the terms of the APA and this Order.

13.     Integreon is not a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity and Integreon shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates except as otherwise expressly provided in the APA.

14.     The APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and Integreon (in consultation with the Committee) without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the APA and any related agreements.

15.     The failure specifically to include any particular provisions of the APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and Integreon that the APA and any related

agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.

16.     Except as provided in the APA, Integreon shall not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are parties or have any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan.  At  Closing, Integreon shall initially deposit $100,000 into an account designated by Debtors (the "Health Insurance Account") for the payment of any claims of any employees under Debtors' health insurance program incurred after the commencement of the bankruptcy through the Closing (the "Health Insurance Claims") and, upon request of the Debtors, Integreon may, in its sole discretion, supplement such amount as needed after Closing so as to allow sufficient funds for the Debtors to satisfy all Health Insurance Claims.  However, on the date that is six months after the Closing, if there any amounts remaining in the Health Insurance Account, they shall be returned to Integreon.  Pursuant to this Order, all funds made available by Integreon for deposit into the Health Insurance Account shall only be available to satisfy the Health Insurance Claims and shall not be available to be used for any other purposes or to satisfy any other claims of the Debtors' estates, whether administrative claims, priority claims, general unsecured claims or otherwise.

17.     At Closing and pursuant to the APA, Integreon, and all its affiliates (as such term is defined in the Bankruptcy Code), shall forgive all of the outstanding indebtedness of the

Debtors and any affiliates, without limitation, all pre-petition debt (secured and unsecured) and any obligations under the debtor-in-possession financing facility (the "DIP Facility") actually incurred pursuant to the budget submitted by the Debtors (as amended from time to time pursuant to the terms of the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d) and 364(e) and Fed R. Bankr. P. 4001 and 9014 (I) Authorizing Debtors to Obtain Secured Post-Petition Financing on Super-Priority Priming Lien Basis and Modifying Automatic Stay, (II) Authorizing Debtors to Use Cash Collateral of Existing Secured Lender, (III) Granting Adequate Protection to Existing Secured Lender, and (IV) Authorizing Debtors to Repay Existing Secured Indebtedness Upon Final Approval* (the "DIP Order") [Docket No. 105], the "DIP Budget") up through the Closing regardless of whether the expenses are paid prior to or subsequent to the Closing.  Integreon shall not file any proofs of claim in the Debtors' chapter 11 cases with respect to any outstanding indebtedness, and any such proofs of claim, if filed, shall be deemed disallowed and expunged without further order of this Court, provided however that Integreon may file or assert any claims that arise under or relate to the APA.  Integreon shall fund all expenses under the DIP Budget actually incurred up through the Closing regardless of whether the expenses are actually paid, provided however, that Integreon shall not have any obligation to fund any budgeted expense that has not actually been incurred.  Such release of indebtedness by Integreon shall be deemed to be the same as the repayment of obligations in accordance with paragraph 20 of the DIP Order, and the rights of the Committee pursuant to paragraph 27 of the DIP Order shall be extinguished.  At Closing and pursuant to the DIP Order, Integreon shall pay in satisfaction of the carve out as provided therein the professional fees and expenses incurred by Debtors' counsel and Integreon shall also fund the Committee Professional Carve Out (defined below), provided further that Integreon shall have no further obligation to

pay any amounts with respect to such carve out including the additional $50,000 referenced in paragraph 26(a)(v) of the DIP Order. Except as set forth herein and in the APA, following the Closing, Integreon shall have no further obligation to lend money or otherwise provide financing pursuant to the DIP Order.

18.     At the Closing, Integreon shall forgive all indebtedness of the Debtors and shall release all of its liens against the property and interests of the Debtors, including but not limited to its interest in the Tax Refunds. Notwithstanding anything to the contrary provided for in this Order, the proceeds of the Tax Refunds shall be divided equally between the Estate Distribution and the Segregated Distribution (each, as defined below) after payment of all reasonable fees and expenses of preparing income tax returns and other related services.

19.     At Closing and pursuant to the APA, Integreon shall (i) release its liens on the proceeds of and its 35% interest in the chapter 5 actions, and all chapter 5 actions shall be preserved for the Debtors' estates provided, however, that Integreon shall be permitted to carve out certain potential preference defendants; (ii) release its liens on the proceeds of and its interest in the Paper Assets; (iii) waive any right to receive any distribution from any of the chapter 5 actions; and (iv) pay to the Debtors an additional cash amount of $242,500 free and clear of its liens, claims and interest in such amounts (collectively, with one-half of the net proceeds of the Tax Refunds, the "Estate Distribution").

20.     At Closing and pursuant to the APA, Integreon shall pay to the Debtors an additional cash amount of $132,500 free and clear of its liens, claims and interest in such amounts (collectively, with the remaining one-half of the net proceeds of the Tax Refunds, the "Segregated Distribution"). The Debtors shall hold the Segregated Distribution in a separate bank account and shall not use, transfer or disburse the Segregated Distribution without further

Order of this Court, except that the Debtors may use that portion of the Segregated Distribution necessary to pay the 2008 Property Tax as set forth herein.

22.     At Closing, Integreon shall pay $225,000, less any amount that previously has been paid to the Committee's professionals by the Debtors or Integreon (the "Committee Professional Carve-Out"), to the Committee's professionals. Integreon shall grant, and gift for the exclusive benefit of the Committee's professionals, in a lump sum payment, the Committee Professional Carve-Out as a carve-out from its liens and security interests. The foregoing lump sum cash payment shall be paid to counsel for the Committee.

21.     No professional fees and expenses incurred by the Committee following the date of filing of the Notice of Material Changes that are related to the formation and administration of any proposed trust or account established or proposed to be established solely for the benefit of the general unsecured creditors shall be paid by Integreon, the Debtors, the bankruptcy estates or from assets of the bankruptcy estates. All other allowed fees and expenses of the Committee's professionals shall be satisfied first from the Committee Professional Carve-Out before seeking or receiving any payment from the bankruptcy estates.

22.     This Court shall retain jurisdiction to enforce the provisions of this Order and the APA, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein.

23.     Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall be effective and enforceable immediately upon entry pursuant to Rule 9006(c)(1).

24.     The provisions of this Order are non-severable and mutually dependent.

25.     Unless otherwise provided in this Order, to the extent the terms and conditions of the APA or any related documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

26.     This Order shall inure to the benefit of Integreon, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with this case or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

/s/ Robert G. Mayer
Date:  April 30,  2009          United States Bankruptcy Court Judge

We ask for this:

/s/ Peter J. Barrett
Michael A. Condyles (VA 27807)
Loc Pfeiffer (VA 39632)
Peter J. Barrett (VA 46179)
KUTAK ROCK LLP
1111 East Main Street, Suite 800
Richmond, Virginia  23219-3500
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192
*Counsel to the Debtors*

Seen and agreed:

/s/ Michael E. Hastings
Jonathan L. Gold (admitted *pro hac vice*)
LECLAIRRYAN, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
(703) 684-8007
(703) 684-8075 Fax
-and-
Michael E. Hastings (Virginia Bar No. 36090)
Brandy M. Rapp (Virginia Bar No. 71385)
LECLAIRRYAN, A Professional Corporation
1800 Wachovia Tower, Drawer 1200
Roanoke, Virginia 24006
(540) 777-3065
(540) 310-3050 Fax
*Counsel for the Official Committee Of Unsecured Creditors*

/s/ Karen B. Dine
PILLSBURY WINTHROP SHAW PITTMAN LLP
Jerry Hall (VA 41511)
Karen B. Dine (admitted *pro hac vice*)
2300 N. Street, NW
Washington, DC 20037
(202) 663-8000
*Counsel for Integreon Discovery Solutions (DC), Inc.*

## **LOCAL RULE 9022-1(C)(2) CERTIFICATION**

The undersigned hereby certifies that on the 29th day of April 2009, the foregoing proposed Order was served upon all necessary parties via electronic mail or first-class mail, postage prepaid, pursuant to the Order Establishing Notice, Case Management and Administrative Procedures entered March 9, 2009 and was endorsed by the above parties.

/s/ Peter J. Barrett

## SCHEDULE 1

| Vendor | Lease # | Cure Amount | Address |
|---|---|---|---|
| Abbyy USA | FREPRW8XO | $52,010.00 | 47221 Fremont Blvd., Fremont, CA 94538 |
| AEL Financial, LLC | 28047743 | $15,796.76 | Box 88046, Milwaukee, WI 53288-0046 |
| Atlantech Online | 003032 | $17,325.48 | 1010 Wayne Avenue, Silver Spring, MD 20910 |
| Broadwing Communications | 1008149818A | $1,867.20 | 1025 Eldorado Blvd., Broomfield, CO 80021 |
| Content Analyst LLC | CA-20080807 | $18,750.00 | 11720 Sunrise Valley Drive, Ste 400, Reston, VA 20191 |
| De Lage Landen Financial Services | 24891033 | $39,239.72 | 1111 Old Eagle School Road, Wayne, PA 19087 |
| De Lage Landen Financial Services | 24912422 | $11,285.46 | 1111 Old Eagle School Road, Wayne, PA 19087 |
| DOCULEX, INC. | ONS80072-L | $28,333.00 | 203 Avenue A, N.W.Suite 300, Winter Haven, FL 33881 |
| Global Crossing Telecommunications | 0204912782 | $9,074.82 | Contract Admin., 1120 Pittsford Victor Road, Pittsford, NY 14534-3818 |
| Ipro Tech | 10915-9 | $21,050.00 | 9630 North 25th Avenue, Phoenix, AZ 85021 |
| Jules and Associates, Inc. | 600-0066767-000 | $17,621.28 | 515 So. Figueroa St., Suite 1950, Los Angeles, CA 90071 |
| Jules and Associates, Inc. | 901-0024451-000/901-0024091-000 | $31,033.50 | 515 So. Figueroa St., Suite 1950, Los Angeles, CA 90071 |
| Kastle Systems LLC | ONSIDC0321 | $6,289.40 | 1501 Wilson Blvd., Arlington, VA 22209 |
| PaeTec Communications, Inc. | 149776 | $26,016.95 | 600 WillowBrook Office park, Fairport, NY 14450 |
| Tetra Financial Group | OSS 001 | $39,333.00 | 3165 East Millrock Drive, Ste 400, Salt Lake City, UT 84121 |